Doris M. **KITTELSON**, Plaintiff and Appellant,

v.

Gilbert L. **KITTELSON**, Defendant and Respondent.

No. 12273.

Supreme Court of South Dakota.

Argued June 9, 1978.

Decided Nov. 30, 1978.

Rehearing Denied Jan. 4, 1979.

---

Steve L. Jorgensen of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for plaintiff and appellant.

Dale E. Bradshaw of Loucks, Oviatt, Bradshaw, Green & Schulz, Watertown, for defendant and respondent.

DUNN, Justice (on reassignment).

This is an appeal from a judgment of the trial court granting Doris Kittelson a divorce from Gilbert Kittelson upon the grounds of extreme cruelty. Doris Kittelson appeals from the property division and alimony provisions of the judgment. We reverse and remand.

Gilbert and Doris Kittelson were married at Watertown, South Dakota, on February 11, 1951. Four children were born as the issue of the marriage, and all four children were of legal age at the time of the divorce trial.

Following their marriage, the parties moved to a rented farm west of Watertown where they resided until 1959, at which time they moved back to Watertown to enable their children to attend the public schools there. Gilbert continued to farm and commute back and forth between the house in town and the farm. Over the years, the parties purchased 483 acres of land in joint tenancy for the farm operation. In 1970, Gilbert began a loose partnership with his two sons for the purpose of dairy farming. The partnership assets included essentially all of the farm operation, including land, equipment and livestock. All farm income was funneled into "Kittelson Dairy Farm," and the living costs and salaries for the partners and their families came out of this "pot" in no particular manner but, rather, as it was needed. In April of 1974, Gilbert moved out of the family home in town. Approximately two years later, Doris filed for divorce.

At the time of the divorce trial, Gilbert was 46 years old and Doris was 45 years old. Gilbert was in reasonably good health, but Doris was hindered by a physical disability consisting of a limp as the result of a bone infection suffered as a child.

On May 13, 1977, the trial court granted Doris a divorce upon the ground of extreme cruelty. The lower court entered judgment directing that Doris be given title to the home in Watertown subject to a mortgage, all household goods and furnishings contained in the home, a 1973 automobile free and clear of liens and encumbrances, and a life insurance policy. Gilbert was awarded all of the farmland, together with the equipment and livestock, and was directed to pay the premiums on the life insurance policy given to Doris, alimony of $300 per month to be reduced by $100 per month when the house mortgage is satisfied, and Doris' attorney fees of $2,500.

■ In reviewing the division of property and award of alimony, we take cognizance of the fact that the trial court has broad discretion in making such division and granting such award, and we will not modify or set them aside unless it clearly appears that the trial court abused its discretion. *Wall v. Wall*, 1977, S.D., 260 N.W.2d 644; *Hanson v. Hanson*, 1977, S.D., 252 N.W.2d 907; *Stenberg v. Stenberg*, 1976, S.D., 240 N.W.2d 100.

■ With regard to the division of property, we have enumerated the principal factors to be considered by the trial court as follows: the duration of the marriage, value of the property, the ages of the parties, the parties' state of health and competency to earn a living, the contribution of each party to the accumulation of the property, the faults and circumstances leading up to the divorce, and the income-producing capacity of the parties' assets. *Wall, supra*; *Hanson, supra*; *Stenberg, supra*; *Kressly v. Kressly*, 1958, 77 S.D. 143, 87 N.W.2d 601. The trial court must make the division of property on the basis of these principal factors while having due regard for equity and the circumstances of the parties. *Hanson, supra*; SDCL 25-4-44.

Regarding the first factor, the Kittelsons had been married for nearly 26 years at the time of the divorce trial. Four children were born as issue of the marriage and were all of legal age at the time of the trial.

■ Our standard of review as to valuation of property is limited to whether the trial court divided the property in an equitable manner, and we will not attempt to place a valuation on the assets because that task is within the province of the trier of fact. *Guindon v. Guindon*, 1977, S.D. 256 N.W.2d 894; *Stenberg, supra.*

■ The record indicates that Gilbert had two different financial statements. The first such statement was incorporated in an FHA loan application in 1975 in which Gilbert declared his net worth to be $216,584. A second statement drawn by Gilbert for the divorce proceedings shows a net worth of $107,832.17, which is further decreased because of a partnership arrangement to a figure of $86,416.08. The trial court accepted the latter figure as to the value of the marital assets. Ordinarily, we will not disturb these findings of the trial court as to the valuation of marital assets. The exceptions to this rule would be where assets are completely overlooked by the trial court or minimized by mortgages which may or may not be legitimate liens against the marital property.

The exhibits relied upon by the trial court fail to break down the mortgages outstanding on the 483 acres of marital property as opposed to those mortgages on 480 additional acres purchased in the sons' names since 1970. It further fails to disclose whether the mortgages outstanding against the marital property were present prior to the financial arrangement for purchasing the additional 480 acres out of partnership assets. Thus we feel that the trial court failed to fully scrutinize the question of valuation.

We first note the fact that Gilbert's placing of all the farm assets into a partnership in 1970 without any contribution from the sons does not preclude the trier of fact from tracing the marital assets and proceeds therefrom prior to the divorce trial. We further note that the testimony reveals that the 483 acres of mortgaged property alone are valued at $144,900 with a net worth of $77,900 after a deduction for outstanding mortgages. Thus, establishing the bona fide mortgages against the marital property is a necessary element in determining net worth.

It would seem imperative in this divorce action that the marital assets and proceeds therefrom be traced on the date when Gilbert placed all the farm assets into a partnership in 1970 without any contribution from the sons. Once these assets are traced, they should be valued as of the date the divorce was granted. We already know that the down payment on the additional 480 acres purchased and placed in the sons' names was made from partnership assets. Whether there was a mortgage or additional mortgage placed on the marital property to complete the purchase is not revealed by

the record. It would appear impossible for the trial court to make a determination as to the net worth of the marital property without this information.

We turn to the factors of age, health, and earning capacity. The parties are approximately the same age. Doris is encumbered with a physical disability consisting of a limp as the result of a bone infection she had during her childhood. It appears that Gilbert's state of health is relatively good. With regard to earning capacity, the record shows that in the past Doris has been employed on a part-time basis as a clerical employee at the minimum wage level. Her earning capacity is diminished by the fact that she has a physical disability, is 45 years old (at the time of trial), and has only a high school education. The record reveals that Gilbert has a very large earning capacity in comparison with Doris in that his net worth has steadily increased over the years, and the farm income has been sufficient to provide approximately $43,500 for the purchase of approximately 480 acres of additional farmland over a four-year period, as well as to take care of Gilbert, Doris, Steve, Ken and Ken's family·(in addition to Connie and Cindy during their minor years).[1]

As a young couple, Gilbert and Doris came into the marriage with no property of any substance. The property that they had at the time of the divorce trial was accumulated during the course of the marriage. Gilbert mentions the fact that Doris disliked the farm. This has absolutely no bearing on her contribution to the farm. Doris made the valuable contribution that most mothers and housewives make, namely, raising the children, cooking the meals, washing the clothes, etc. The record shows that after the children were born, Doris did part-time office work and some seasonal income tax work. She applied her earnings to pay tractor gasoline bills and premiums on one of the life insurance policies, to buy shoes for the children, groceries for the household, and furniture for the home.

Doris clearly contributed in a substantive manner to the accumulation of the marital property.

Regarding fault[2] and the circumstances leading up to the divorce action, the ground upon which the divorce was granted was extreme cruelty. The record reflects the reason Doris filed the action, i. e., Gilbert was living with another woman. The trial court found that Gilbert was at fault and granted the divorce to Doris.

There is wide disparity in the parties' respective financial conditions after the property division. Gilbert has a 483-acre farm and dairy operation, together with equipment and livestock. The farm produces a gross income consistently in the six-figure range. Doris has a car, a house subject to mortgage, and a life insurance policy. It is obvious that Gilbert retained substantially all of the income-producing property.

The foregoing review of the factors involved leads us to the conclusion that the marital assets have not been divided in an equitable manner and the trial court has abused its discretion.

Reviewing the award of alimony, we must keep in mind that the amount and length of alimony payments is in the trial court's discretion. SDCL 25–4–41. The factors that guide the trial court in the exercise of its discretion are very similar to those used in determining the division of property with the additional factors of the parties' standard of living and their respective financial conditions after the property division. *Guindon, supra.* This court stated in *Guindon* that

> "[a]limony will not be awarded in such an amount as would allow a wife capable of work to sit in idleness, nor will it be denied merely because she may be able to obtain employment and support herself." (256 N.W.2d at 898)

---

1. Steve, Ken, Connie and Cindy are the four children born of the marriage.

2. This case was decided prior to the enactment of Ch. 165, S.L.1976, now SDCL 25–4–45.1, which removed fault as a consideration in the division of property.

**90**

Regarding the standard of living factor, Doris is certainly entitled to receive alimony in an amount which will enable her to maintain the standard to which she is accustomed, and Gilbert is apparently financially able to provide such support for Doris. The record indicates that Gilbert was providing a comfortable standard of living for Doris during their marriage, including the period of time during which this case was pending. As to the parties' respective financial conditions, there is wide disparity in the financial condition of Gilbert and Doris as the result of the trial court's division of property. At the time of the divorce trial, the parties had been married nearly 26 years; their respective earning capacities and financial conditions after the property division were unequal; Doris is somewhat physically disabled; and Gilbert was at fault in the termination of the marriage.

Upon the foregoing consideration of the factors involved, we must conclude that the amount of alimony awarded is low under the circumstances and the trial court abused its discretion.

We must remand this case to the trial court to make an equitable division of property and award of alimony. The wide disparity in the parties' respective financial conditions can be remedied by adjusting the property division in a more equitable manner, i. e., a reasonable amount of farmland (out of the 483-acre marital property) may have to be conveyed *in fee* to Doris. The record exhibits her willingness to maintain the physical integrity of the farm operation; therefore, a suitable rental arrangement might be agreed upon. An alternative to such a property division is a lump sum settlement payable in installments with interest. Doris is also entitled to alimony in an amount commensurate with the cost of the comfortable standard of living to which she is accustomed.

We reverse the judgment of the trial court regarding the division of property and award of alimony and remand the case to the trial court with instructions to review its determination of property valuation and to make an equitable adjustment in the economic resources of the parties consistent with this opinion.

WOLLMAN, C. J., and ZASTROW and PORTER, JJ., concur.

MORGAN, J., dissents.

MORGAN, Justice (dissenting).

I dissent. Without entering into a disputation with the majority on the fact situation which I view somewhat differently, I would merely note that on the record before us, as I read it, neither the division of property nor the alimony award appears so inequitable as to require reversal.