Wanda J. COOPER, Plaintiff
and Appellee,

v.

William M. COOPER, Defendant
and Appellant.

No. 12884.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 17, 1980.

Decided Dec. 17, 1980.

Kenneth F. Vavra, Tappe & Vavra, P. C., Platte, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

FOSHEIM, Justice.

Plaintiff commenced this action for divorce on the grounds of extreme mental and physical cruelty. Defendant's answer contained a general denial and a counterclaim for divorce. The trial court granted a divorce to the plaintiff. The defendant appeals from the property provisions of the judgment. We affirm.

At the time of trial, plaintiff was aged 50 and the defendant was 53 years of age. The parties, married on November 17, 1972, each had grown children by previous marriages. At the time of the marriage, the defendant was employed as a heavy equipment operator for a construction company. He owned a home in Canistota, South Dakota, subject to a mortgage for .$2,500.00. Plaintiff owned an 800 acre farm in Charles Mix County that she and her previous husband had operated until his death in 1968. She also had over one hundred head of cattle, farm machinery, some shares of Broken Arrow Ranch stock, and approximately $18,000.00 in her checking account. That account became a joint checking account after the marriage. To this account, plaintiff deposited $5,000.00 from the proceeds of an insurance policy on the life of her former husband and, in 1977, she deposited an additional $20,250.00 from the sale of Broken Arrow Ranch stock. She did considerable work on the farm, operating machinery and helping with the livestock. The evidence indicates that she was a better farm manager and operator than was the defendant.

During the marriage, the parties spent between $7,000.00 and $9,000.00 for repairs, improvements and payments on the Canistota house. At the time of the divorce, the unpaid balance on the mortgage was about $300.00.

At the time of trial, there were 60 cows, four bulls, four horses, 1,500 bushels of oats, 350 bushels of corn, machinery, and a savings and farm checking account. Between the time of the parties' separation and the date of trial, the plaintiff sold corn and cattle for approximately $68,000.00. From that amount, $37,000.00 was applied towards expenses and payment of a note at the bank, leaving a balance of $31,000.00, which is in bank accounts. Plaintiff also paid off a bank loan of $20,000.00 plus interest, which was obtained by the parties in 1973. During the period of the marriage, plaintiff made land payments each year of $1,500.00; three from the joint account and the balance from her own funds.

In 1974, the plaintiff deeded a quarter of her land in Brule County to the defendant and herself in joint tenancy. At the time of trial, there was a mortgage against that and another quarter in the unpaid amount of $23,000.00. The home of the defendant in Canistota was then worth between $18,-000.00 and $20,000.00.

The basic issue on appeal is whether the trial court properly considered all of the necessary factors in making the property division, including the land transferred in joint tenancy.

The judgment provided that plaintiff pay the defendant the sum of $12,000.00. The defendant was granted ownership of the Canistota home, as improved, and all his personal effects. The defendant was directed, however, to deed to the plaintiff all of his interest in the Brule County quarter of land held in joint tenancy, subject to the encumbrances thereon which plaintiff was to assume. The plaintiff was granted sole ownership of all the farm land, machinery, equipment, livestock and other remaining property of the parties. The parties were directed to pay their own attorneys' fees.

■ In reviewing the distribution of the property, we must remember that a trial court "is not bound by any mathematical formula but shall make such award from the material factors before [it] having due regard for equity and the circumstances of the parties." *Kressly v. Kressly*, 77 S.D. 143, 150, 87 N.W.2d 601, 605 (1958). The principal factors to be considered by the trial court are: (1) the duration of the marriage; (2) the value of the property; (3) the ages of the parties; (4) the health of the parties; (5) their competency to earn a living; (6) the contribution of each party to

the accumulation of the property; and (7) the income—producing capacity of the parties' assets. *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980); *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); *Wall v. Wall*, 260 N.W.2d 644 (S.D.1977). The trial court, upon considering such factors, has broad discretion in making a division of property and that division will not be set aside or modified unless it clearly appears that the trial court abused its discretion. *Clement v. Clement*, supra; *Price v. Price*, 278 N.W.2d 455 (S.D.1979); *Wall v. Wall*, supra.

■ The court found that, partly due to the poor management on the part of the defendant and partly due to economic conditions, there were no gains made in the net worth of the parties' farming operation, except for appreciation of the farm land. The defendant contends that the court should have considered the enhancement of the value of the real estate. However, unlike cases such as *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979), where the parties accumulated property during the course of a long marriage, the parties here were married about six and one—half years. While the defendant was involved in the management of the farm, the operation showed an annual loss. The real estate was not accumulated during the course of the marriage and the defendant contributed nothing to the appreciated land values, which resulted entirely from inflation rather than increased productivity.

■ The defendant's next argument concerns the one—half interest in the quarter section of land held in joint tenancy. The trial court determined the value of this farm land at $48,000.00. One—half of that value, or $24,000.00, less one—half of the outstanding mortgage in the amount of $11,500.00, left the defendant with a $12,-500.00 equity. The trial court awarded defendant $12,000.00 cash, plus his Canistota property as improved. The trial court had full power to make a division of the property belonging to either or both parties regardless of the name in which title was vested. SDCL 25–4–44.[1] It appears that the defendant did, in fact, receive his share of the joint tenancy property in the form of cash.

■ The final issue is whether the trial court abused its discretion in refusing to award attorneys' fees to the defendant. SDCL 15–17–7[2] grants the trial court power to order payment of attorneys' fees in divorce cases where such an allowance seems warranted and necessary to the court. The defendant failed to request attorneys' fees or costs at trial; on the contrary, his proposed conclusions of law as well as his proposed judgment and decree requested that "[e]ach of the parties ... pay their [sic] own attorney fees." He thus made no showing of necessity to the trial court.

■ An issue may not be presented for a first time on appeal. *In re Estate of Grimes*, 87 S.D. 187, 204 N.W.2d 812 (1973); *Fales v. Kaupp*, 83 S.D. 487, 161 N.W.2d 855 (1968). The appellant must affirmatively establish a record on appeal that shows the existence of error. He must show that the trial court was given an opportunity to correct the grievance he complains about on appeal. *Estate of Assmus*, 254 N.W.2d 159 (S.D.1977). This he has failed to do.

---

1. SDCL 25-4-44 provides:

    Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstance of the parties.

2. SDCL 15–17-7 provides:

    The court may allow attorneys' fees as costs for or against any party to an action only in the cases where the same is specifically provided by statute, but nothing herein shall abridge the power of the court to order payment of attorneys' fees in all cases of divorce, annulment of marriage, or for separate maintenance and alimony, where the allowant of the same before or after judgment shall seem warranted and necessary to the court. Nor shall anything herein abridge the power of the court to allow attorneys' fees from trusts administered through the court.

Considering all the factors involved, we cannot conclude that the trial court abused its discretion. *Clement v. Clement*, supra; *Hansen v. Hansen*, 273 N.W.2d 749 (S.D. 1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978). The judgment is affirmed.

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I dissent.

Plaintiff testified that in 1972, when she met defendant, she was working in a bar and had a hired man running the farm. She met defendant in March of that year and married him in November. Defendant, at the time of the marriage, was operating a crusher for Sweetman Construction Company and was working throughout the State of South Dakota earning $12,000 a year.

After following construction for a short period of time, plaintiff and defendant moved to the wife's farm in the spring of 1973. Essentially, for six and one–half years, he became the new hired man. He planted and harvested the crops and fed the livestock. Plaintiff's brief admits: "The evidence showed that both parties contributed labor to the farming operation but due to defendant's poor managerial abilities, the farming operation failed to show much profit." However, the trial court's posture towards defendant's efforts was somewhat more benevolent, for in Finding of Fact VII it stated:

> Partly due to the poor management on the part of the Defendant and *partly due to economic conditions*, there were no gains made to the net worth of the farming operation *except for appreciation of the land* which was inherited by plaintiff. (Emphasis supplied.)

During the marriage, defendant contributed approximately $4,000 from retirement savings for the parties' mutual living expenses and to keep the farming operation solvent. This is borne out by Finding of Fact VIII of the trial court. Plaintiff

would lead us to believe, through her brief and the urgings before this Court, that she was the real worker on the farm, the brains, the keeper of books of account, and a better farm manager than defendant. As good a manager as she portrays herself to be, and as bad as he is alleged to be, the point is that for six and one–half years he tilled the land, harvested the crops, and took care of the livestock. In other words, he worked and helped keep the farm unit together. In fairness, it is unquestioned that she likewise contributed farm labor during this period of time. It is important to bear in mind that, during this period of time, the farm realty nearly doubled in value.

When defendant left the farm in August of 1978, the parties had 84 cows, 4 bulls, 32 pigs, 4 horses, $24,000 worth of new farm machinery, 1500 bushels of oats, 350 bushels of corn, 66 yearling cattle and 62 head of calves. Plaintiff sold corn and cattle and received proceeds of approximately $67,000 to $68,000 between August of 1978 and the date of trial, April 11, 1979. Defendant was awarded no livestock. Unless his $12,000 cash award is construed to be generated from the $67,000 to $68,000 produce sold, defendant received none of the cattle and corn proceeds.

The testimony indicates that the parties acquired $24,000 worth of new farm equipment during the marriage. Plaintiff's tax return for the year 1972, the year of the parties' marriage, reflected the farm equipment that she had on hand as having a depreciated value of $5,300. Defendant received no farm equipment award.

Using the parties' tax returns and eliminating depreciation, plaintiff admitted the parties had $5,800 spendable dollars from their farm operation in 1973 and had also accumulated, by the end of that year, 84 cows, 98 calves, 3 bulls and 19 young cows. Using the same method, in 1974 they had $1,600 in spendable income, and had increased their inventory to 126 cows, 124 calves, 6 bulls, 103 pigs and 63 yearlings.

In 1975 the parties had $5,400 spendable dollars and the inventory of livestock remained constant. In 1976 they had $10,300

spendable dollars but the inventory dropped to 96 cows, 4 bulls, 3 calves, 57 yearlings, and 69 hogs. In 1977 they had a cash loss of $2,700 but their inventory jumped to 85 cows, 86 calves, 3 bulls, 55 yearlings and 34 hogs. In the year 1978, however, their income jumped substantially and they profited the sum of $55,800. They also had a substantial inventory of animals, as reflected above. Plaintiff did not economically fare as badly with her husband as she would have the courts of law believe. At the time of trial, defendant had three pieces of used furniture (which the trial court permitted him to keep), his clothes (likewise), a 1968 Chevrolet pickup valued at $1,000, a $2,000 debt incurred for living expenses, and was penniless. From the time he was ordered off the farm in August of 1978 until the date of trial, he received $400 from the farm operations. Plaintiff had access to all accounts, money, farm, machinery, crops, livestock, and the proceeds from sales of crops and livestock.

Although defendant concentrates his appellate thrust on erroneous adjudication of the land valuation increase, his appeal is taken from the final judgment and the whole thereof.

I am convinced that the marital assets were not divided in an equitable manner and the trial court abused its discretion. Defendant was entitled to an equitable share (as distinguished from nothing) of the enhanced farm land values. The trial court, although recognizing there was an appreciation of the farm's land value, disregarded its own recognition thereof as being an asset of the parties to be equitably divided. This asset amounted to $80,000. Surely defendant had something coming out of that $80,000 increase in value by virtue of his contributions to the farm for six and one-half years. The trial court simply ignored all inflationary equity. Defendant's sweat helped create that inflationary equity.

As recent as June 4, 1980, we held in *Clement v. Clement*, 292 N.W.2d 799 (S.D. 1980), that the husband's property, inherited from his father, could be considered in the division of property. Here, we are not only upholding the trial court's decision to not include property inherited by the wife, but we are going one step further: denying the husband any land value appreciation where he has lived and toiled upon the land for six and one-half years.

In *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978), we held that the placement of the parties' farm, equipment, and livestock into a partnership between the husband and the parties' sons did not preclude the trial court from scrutinizing the valuation of the partnership's assets in making an equitable division of the marital property between the husband and the wife. The comparative nexus between *Kittelson* and this case leads me to conclude that this Court should look beyond the ownership of the land as reflected by the title thereto, and instead look to the respective contributions of the parties.

Defendant's house in Canistota increased in value from $10,000 or $12,000 when he got married, to a value of $18,000 to $20,000 at the time of trial. The combined value of inflationary equity for the farm and the house was therefore $88,000 of which he received approximately $8,000 to $10,000. This appears to be patently unfair. A circumstance also to be considered is defendant's loss of income as a construction worker.

In these days of loud and forceful proclamations for "equal rights" for women, I would opt for a clarion call for the equal rights of all. Equity for both men and women is equality under the law.