Patricia O'CONNOR, Plaintiff
and Appellant,

v.

Michael O'CONNOR, Defendant
and Appellee.

No. 13096.

Supreme Court of South Dakota.

Argued Feb. 13, 1981.

Decided June 17, 1981.

Douglas E. Kludt of Bergren & Duffy, Fort Pierre, for plaintiff and appellant.

Frank J. Brady of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for defendant and appellee; James K. DeSaix of Miller & DeSaix, Beresford, on brief.

FOSHEIM, Justice (On reassignment).

This is an appeal by Patricia O'Connor (appellant) from a judgment dated February 5, 1980, which awarded Michael O'Connor (appellee) a decree of divorce, custody of a minor child, and made a property division between the parties. Appellant also appeals from the trial court's order of September 8, 1980, which denied her motion to vacate the judgment of February 5, 1980,

and her request for appellate attorney fees.* We reverse and remand.

Appellant and appellee were married on December 11, 1975. The parties had been previously married to each other; the first marriage was solemnized on December 29, 1972, and terminated on September 5, 1974, by a divorce granted to appellee. Appellant has two children by a prior marriage who were ages sixteen and ten at the commencement of these proceedings. One child, a daughter, was born on February 8, 1976, as a result of the second marriage. She was born with a cleft palate and has twice undergone corrective surgery. She also requires professional speech therapy.

During the marriage, appellant worked part-time as a registered nurse. Appellee is a self-employed farmer, tilling approximately 680 acres of land, 160 of which he owns, the remaining 520 being leased. He also owns the residence located on the farm, several other outbuildings, and miscellaneous farm machinery. Appellee's land and farm equipment are subject to considerable mortgage indebtedness.

In July of 1979, appellant signed a criminal complaint against appellee, charging him with assault and battery. This action stemmed from an incident which occurred July 7, 1979. Appellant maintains that she was "brutally assaulted" by appellee as a result of an argument between her and appellee. Appellee, on the other hand, maintains that he did not physically harm appellant, but only slapped her once due to her erratic behavior. The Union County sheriff, who saw and spoke with appellant one day after the incident, testified that he observed no bruises, lacerations, or bumps on appellant. The criminal complaint was eventually withdrawn by appellant.

On July 27, 1979, appellant filed for divorce, alleging extreme cruelty on the part of appellee. Appellee counterclaimed on August 22, 1979, denying appellant's allegations and praying for a judgment of divorce on grounds of extreme cruelty. Trial was held on October 1 and 2, 1979, from whence the trial court determined that appellant failed to prove her cause of action for divorce, and that appellee did sustain his burden of proof on the counterclaim and was thus entitled to a divorce. The trial court also adjudged that the best interest and welfare of the parties' daughter would be served by granting custody to appellee. The trial court awarded appellant certain items of personal property, household articles, an automobile valued at $4,000.00, and $4,000.00 in cash. Appellee was awarded 160 acres of realty, all farm implements and machinery, livestock, and certain household goods. All indebtedness against any of this real and personal property was to be the responsibility of appellee. No alimony was awarded to either party.

Subsequent to this judgment, appellant motioned the trial court to vacate its judgment granting appellee's counterclaim for divorce based upon the alleged fraudulent testimony of appellee. Pursuant to a hearing, the trial court denied this motion and also denied her request for appellate attorney fees.

Appellant contends that the trial court erred in denying her motion to vacate the divorce judgment of February 5, 1980. This motion was premised upon appellee's testimony at trial accusing appellant, Marie Hughes (appellant's mother), and another woman of stealing drugs from a hospital in Chamberlain, South Dakota. Ms. Hughes, a registered nurse at the Chamberlain hospital, testified at trial, subsequent to appellee's accusations, that she has never removed drugs from the hospital without authorization. At the hearing on the motion to vacate, all three accused women denied ever removing drugs from the hospital; however, appellee reasserted that the three women did, in fact, take drugs from the hospital on January 25, 1977. Appellant and Ms. Hughes voluntarily submitted to a polygraph examination. Subsequent to these examinations, it was the opinion of the polygraph examiner that the two women were telling the truth when they stated that they did not steal the drugs. Further,

---

* Appellant's present counsel did not represent her at trial.

several affidavits were submitted by various hospital personnel in an attempt to exonerate the accused women. Nevertheless, after hearing the evidence and observing the witnesses, the trial court denied appellant's motion.

■ In support of her contention, appellant relies upon SDCL 15–6–60(b)(3), which reads:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

On appeal, it must be shown by clear and convincing evidence that sufficient fraud or deceit has occurred which will justify relief from a trial court's judgment. *Estate of Sedlacek v. Mount Marty Hospital Ass'n*, 88 S.D. 333, 218 N.W.2d 875 (1974); *M.E. Smith & Co. v. Kimble*, 38 S.D. 511, 162 N.W. 162 (1917).

■ Appellant contends that the trial court based, in part, its final judgment of February 5, 1980, upon the testimony of appellee regarding the alleged drug-stealing incident due to language in the trial court's memorandum opinion which mentioned the importance of each party's credibility. It is the trial court's findings of fact and conclusions of law, however, which are to be considered on appeal; a lower court's memorandum decision is not reviewable by this Court. *Wall v. Wall*, 260 N.W.2d 644 (S.D.1977); *Christiansen v. Strand*, 82 S.D. 416, 147 N.W.2d 415 (1966). Appellant fails to consider that no finding of fact was entered by the trial court reflecting that appellant had stolen drugs from the hospital. There is ample evidence in the record, aside from any consideration of drugs, to substantiate the trial court's decision in favor of appellee.

■ We therefore hold that appellant has not shown by clear and convincing evidence that the trial court erred in denying her motion to vacate.

Appellant next maintains that the trial court abused its discretion in awarding custody of the minor child to appellee. In its conclusions of law, the trial court specifically found "[t]hat the best interest and welfare of the child . . . with respect to her temporal, mental and moral welfare will be served by vesting her permanent care and custody in [appellee]." *See*: SDCL 30–27–19; *Hanks v. Hanks*, 296 N.W.2d 523 (S.D. 1980); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D. 1979); *Miller v. Miller*, 245 N.W.2d 501 (S.D.1976). This conclusion was based upon specific factual findings of the trial court.

With regard to the familial environment provided by appellee, the trial court found that appellee was willing and competent to care for the parties' daughter. The trial court also found that appellee regularly attended church, and aided his daughter and his two stepchildren in religious programs offered by the church. Conversely, appellant was found to be indifferent toward this aspect of the children's lives. The trial court further stated in its findings of fact that appellee loves the child very much.

As previously mentioned, the parties' daughter continually requires professional therapy due to her cleft palate. In its findings of fact, the trial court stated that, upon the parties' separation, appellant took the child to her mother's home in another city, thereby removing her from her regular therapist, who the trial court believed was better qualified to provide the required therapy. The trial court further found that appellant had scheduled surgery for the child in Rapid City, South Dakota, knowing that surgery had already been scheduled in Sioux Falls, South Dakota, with personnel who were familiar with the child's specific condition. In its findings of fact, the trial court found that appellant would occasionally use drugs to induce sleep; the trial court found that appellant may have been using these drugs to excess. The trial court further stated in its findings of fact that appellant visited her sister in New York in December of 1978, and when appellee ob-

jected to her leaving, appellant responded by reminding appellee that he was quite capable of caring for the children while she was gone.

■ In determining the custody of minor children, the trial court has broad discretionary powers and this Court will not interfere with that discretion unless there is a clear case of abuse presented by the record. *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Haskell v. Haskell*, 279 N.W.2d 903 (S.D.1979); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979). In light of the findings of the trial court, we hold that the trial court did not abuse its discretion by awarding appellee custody of the parties' daughter.

■ Appellant further contends that the trial court erred by granting appellee a divorce. Briefly, appellant maintains that due to the incident of July 7, 1979, and other alleged episodes of physical abuse by appellee, the trial court erroneously dismissed her divorce complaint, which alleged extreme cruelty on the part of appellee. SDCL 25–4–4 defines extreme cruelty as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." As the trial court noted, no evidence of any physical abuse was seen by several witnesses who observed appellant within 6 to 48 hours after the July 7, 1979, incident. Accordingly, the trial court made no finding of fact of grievous bodily injury inflicted by appellee on appellant.

Appellee's counterclaim prayed for a divorce on grounds of extreme cruelty. Without belaboring the issue, it suffices to say that the record is replete with evidence of appellant's erratic behavior and her callous attitude concerning the more intimate aspects of the marriage relationship. We conclude that the trial court did not err by dismissing appellant's complaint and granting appellee a divorce on the grounds stated.

■ Appellant also contends that the trial court abused its discretion when it distributed the property of the parties. In reviewing the division of property we take cognizance of the fact that the trial court has broad discretion in making such division and we will not modify or set it aside unless it clearly appears that the trial court abused its discretion. *Michael v. Michael*, 287 N.W.2d 98 (S.D.1980); *Andera v. Andera*, 277 N.W.2d 725 (S.D.1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978). SDCL 25–4–44. In making an equitable division of property, the trial court is not bound by any mathematical formula but is to make the award on the basis of the material factors in the case, having due regard for equity and the circumstances of the parties. These factors include the duration of the marriage, the value of the property of each of the parties, the ages of the parties, their health and competency to earn, and the contributions of each of the parties to the accumulation of the marital property. *Michael v. Michael*, supra; *Kressly v. Kressly*, 77 S.D. 143, 87 N.W.2d 601 (1958). See also *Hansen v. Hansen*, supra; *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Vaughn v. Vaughn*, 252 N.W.2d 910 (S.D.1977); *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977).

■ Here, the marriage lasted slightly longer than four years. Both parties are in relatively good health and are in their mid-thirties. Appellee was awarded real and personal property valued at $385,352; this included 160 acres of highly-productive farm land, the home and outbuildings located thereon, farm machinery, and livestock. Appellant, on the other hand, received $4,000 in cash, a $4,000 automobile, and various personal items valued at $1,000. Appellee, whose net worth at the time of trial was approximately $90,000, entered the marriage with considerable property and that which he received by way of the divorce decree is not unencumbered. Appellant, however, worked part-time and contributed her entire income of $13,000 over the four-year duration of the marriage. She also bore a child and suffered a miscarriage during the marriage. Additionally, as we noted in *Kittleson v. Kittleson*, supra, the performance by a housewife and mother of typical domestic duties con-

stitutes a valuable contribution to the accumulation of farm property. Although appellant's contribution to the acquisition of the marital property was not as substantial as that in other cases we have reviewed, it was more than de minimis. *Currier v. Currier*, 296 N.W.2d 713 (S.D.1980); *Kittleson v. Kittleson*, supra. We conclude that, under the circumstances of this case, an award of $9,000 was inadequate and constituted an abuse of discretion.

 Finally, appellant maintains that the trial court erred by denying her motion for attorney fees on appeal. "The court may allow attorneys' fees ... in all cases of divorce ... where the allowance of the same before or after judgment shall seem warranted and necessary to the court." SDCL 15–17–7. This Court and the trial court have concurrent jurisdiction to require payment of attorney fees on appeal. *Holforty v. Holforty*, 272 N.W.2d 810 (S.D. 1978). We have reviewed the economic and equitable position of each party and conclude that appellant is entitled to attorney fees on appeal.

That portion of the judgment and decree of divorce dated February 5, 1980, which makes a division of the property is reversed; that part of the order dated September 8, 1980, which denied appellant's request for attorney fees on appeal is also reversed. The case is remanded accordingly.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN and HENDERSON, JJ., concur in part and dissent in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur with the majority opinion with exception of the property division reversal. Upon a review of the parties' circumstances under the factors enumerated in *Michael v. Michael*, 287 N.W.2d 98 (S.D.1980), et al., I do not believe that the trial court clearly abused its discretion.

The trial court's award to appellee of the 160 acres of realty and outbuildings and machinery thereon is deceptive in nature. At first blush, it appears that this award, when compared to appellant's award of approximately $9,000.00 in personalty and cash, is inequitable. Upon closer inspection, however, three pertinent considerations substantiate the trial court's property division and reveal the true equitable posture of the parties.

First, although much of the farm assets were awarded to appellee, it is important to note that, as the trial court stated in its findings of facts, "[a]ll of the real and personal property of [appellee] is subject to a considerable mortgage indebtedness." As indicated by his financial statement submitted to the trial court, appellee had a combined liability (short-term and long-term debts) of $295,663.53 as of September 1979. Approximately $268,000.00 of this liability consisted of a mortgage on the 160 acres and other long-term debts stemming from farm machinery, implements, and supplies. It should be noted that the trial court held appellee responsible for all indebtedness against any realty or personal property related to the farm. Indeed, appellee's net worth actually decreased more than $41,000.00 during the course of the parties' marriage.

Second, it is undisputed that appellee entered into the marriage with considerable property, including the 160 acres of realty. This Court only considers the contributions made by each party *during the marriage* to the acquisition or accumulation of the marital estate. *See Vaughn v. Vaughn*, 252 N.W.2d 910 (S.D.1977); *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977). Since appellee owned the 160 acres prior to the parties' marriage, appellant is necessarily precluded from any property award which takes this realty into account. Thus, the majority opinion's foundation (appellee's seemingly large award of land assets) crumbles under closer scrutiny.

Third, the majority's reference to the typical domestic duties performed by appellant is ill-advised. Appellant's domestic contribution was poor and anything but typical.

The following findings of fact by the trial court indicate appellant's attitude toward her husband and family:

[Appellant], because of her working hours from 3 p. m. to 11 p. m. would invariably sleep in, requiring [appellee] to ready the [children] for school, to prepare breakfast for them, and to get them to the school bus on time.

[Appellee] did indeed look after all of the children—cooking meals, doing laundry, etc.

[Appellee] is very active in the Catholic faith and attends church regularly; and that he saw to it that [appellant's children by a former marriage and the child of this marriage] participated regularly in their religious education offered by the Catholic church; that [appellant] would infrequently attend church and was in most cases indifferent to her religious responsibility towards the children.

[Appellant] on occasion would use drugs, some of which being identified as Dalmane and Tagamet; [appellant] admitted using these drugs and others occasionally to induce sleep; [appellee's] Exhibit A indicates that [appellant] may have been using drugs to excess.

[Appellant] encouraged [appellee] to engage in sexual intercourse with other women, contending that such conduct would enhance their marriage. [Appellee] was at all times faithful to his marriage vows.

[Appellant] on different occasions has behaved in an erratic and irrational manner, and would explain this behavior as either unimportant or a product of other people's imagination.

These findings speak for themselves. I, for one, do not consider this type of domestic performance a valuable contribution to the acquisition of the marital property.

The above factors, in my opinion, sufficiently indicate that the trial court made an equitable division of property and did not clearly abuse its discretion.

I am authorized to state that Justice DUNN joins in this concurrence in part and dissent in part.