**Harry L. OWEN, Plaintiff and Appellee,**

v.

**Marilyn OWEN, Defendant and Appellant.**

**No. 14278.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1984.

Decided July 3, 1984.

Randy S. Bingner, Clark, for plaintiff and appellee.

T.F. Martin of McCann, Martin & Mickelson, Brookings, for defendant and appellant.

MORGAN, Justice.

This appeal arises from the property division set out in the Owens' divorce decree. The wife filed a notice of appeal. We affirm.

At the time of the divorce Harry L. Owen (Harry) was about sixty years of age and Marilyn Owen (Marilyn) was forty-nine. This was the second marriage for both. In March 1977, Harry and Marilyn became engaged and for approximately three and one-half years lived together until their marriage on December 21, 1980. They separated one year and seven months after the marriage. The divorce action followed.

Prior to the marriage, Marilyn owned a 1972 Oldsmobile automobile, a 1975 Marshfield mobile home and the lot on which the mobile home was located, a certificate of deposit (CD), a savings account, and her personal furniture. Prior to his relationship with Marilyn, Harry had $70,000 to $75,000 in bonds, $50,000 to $60,000 in a savings account and a retirement pension. During the marriage, a CD in the amount of $24,000 was purchased from the proceeds of crops harvested prior to the marriage. At Harry's direction, Marilyn purchased the CD in both of their names as joint tenants. Marilyn, without Harry's direction, arranged to have the interest deposited to her personal checking account monthly. She testified at trial that she had received something over $6,000 through these interest payments. Harry also purchased a 1980 Oldsmobile 98 for use by the parties during the marriage. Marilyn claimed that she was the principal user of this vehicle and that it was a gift to her from Harry.

■ It is settled law in South Dakota that this court will not disturb a property division unless it clearly appears that the trial court abused its discretion in entering its judgment. *Jones v. Jones,* 334 N.W.2d 492 (S.D.1983); *Ostwald v. Ostwald,* 331 N.W.2d 64 (S.D.1983); *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982); *Nauman v. Nauman,* 320 N.W.2d 519 (S.D.1982); *Hrdlicka v. Hrdlicka,* 310 N.W.2d 160

(S.D.1981). The trial court's discretion is therefore very broad; it is not, however, uncontrolled. A property disposition must soundly and substantially be based upon testimony and evidence. *Ostwald, supra; Hrdlicka, supra; Krage v. Krage,* 329 N.W.2d 878 (S.D.1983); *Haskell v. Haskell,* 279 N.W.2d 903 (S.D.1979); *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975). The equity of a property settlement rests upon several factors as they appear material to the facts and circumstances of each case. *Krage, supra; Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979).

■ The trial court is not bound by any mathematical formula, but it must consider the duration of the marriage, the value of each party's property, their ages, health and ability to earn a living, the value of each party's assets and their income-producing assets, and each party's contribution to the accumulation of marital property. *Hersrud v. Hersrud,* 346 N.W.2d 753 (S.D.1984); *Krage, supra; Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Vaughn v. Vaughn,* 252 N.W.2d 910 (S.D.1977); SDCL 25-4-44.

■ The trial court divided the property in light of the parties' circumstances and the principles of equity, pursuant to SDCL 25-4-44. In substance, the property division awarded Marilyn the property which she had owned prior to the marriage, the approximate $6,000 in interest she received on the CD, and an award of $5,000 cash. Harry retained what remained of the property he owned prior to the marriage, the Oldsmobile 98 automobile, and the $24,000 CD.

Marilyn first attacks the property division on the grounds that the Oldsmobile 98 and one-half of the CD were gifts to her from Harry. She asserts that Harry gave her the car and an interest in the CD as consideration for her contributions as a wife and homemaker and cites *O'Connor v. O'Connor,* 307 N.W.2d 132 (S.D.1981). *O'Connor* is distinguishable. There the marriage lasted more than four years, compared with one and one-half years here.

The wife in *O'Connor* worked part-time and contributed her entire income during the marriage. She also bore a child and suffered a miscarriage during the marriage. Marilyn did not work, contribute income, or bear children during this marriage. The *O'Connor* opinion points to *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D. 1978), for the rule that a housewife's performance of typical domestic duties constitutes a valuable contribution to the accumulation of farm property. The trial court in this case found that Marilyn did not contribute to the accumulation of property, did no chores or field work and, in fact, disrupted the farm operation.

■ The donor's intent must be shown in order to determine that a gift has been made; "[a] gift is a transfer of personal property, made voluntarily and without consideration." SDCL 43–36–1. The essential elements of a gift inter vivos are intent, delivery and acceptance. The trial court found in regard to the Oldsmobile that Harry had purchased the automobile for the use of the parties, "and at no time intended to make a gift of this automobile to [Marilyn]." The record shows that Harry purchased the vehicle with his own funds and more importantly that he registered it in his own name. Although Marilyn was the predominant driver of the car, there is no evidence of any intent on Harry's part to make a gift.

■ As regards the CD, there is no question that it represents proceeds from pre-marriage harvests. The trial court can award a certificate of deposit in joint ownership to the owner thereof, irrespective of its joint ownership, if the owner did not intend to create an equal right in the funds deposited. *Farmers State Bank of Winner v. Westrum*, 341 N.W.2d 631 (S.D. 1983). The trial court found that Harry did not make a gift of the CD to Marilyn. The record shows that Harry's reason for directing that the CD be issued in joint tenancy was because it was convenient and he thought that married people did it that way. The fact that a bank account was opened in the names of the depositor and another is evidence of the depositor's intent that either party draw upon the account, but it is not sufficient to establish a gift inter vivos of the deposit or of any interest in the deposit. *In Re Berzel's Estate*, 101 N.W.2d 557 (N.D.1960).

The record supports the trial court's finding of fact that Harry did not intend to make a gift of the CD or any portion thereof to Marilyn. The fact that the trial court so generously awarded her the interest in excess of $6,000 is not before us because Harry did not file a petition for review. In our opinion, the trial court was not clearly erroneous in its findings and conclusions regarding the automobile or the CD.

■ The second issue Marilyn raises is the trial court's purported failure to consider her "services" to Harry during the pre-marriage live-in arrangement. This sounds in the nature of a request for palimony, yet we find nothing in the pleadings to support such an award, if indeed there is any basis for it under our statutes or decisions. Marilyn utterly fails to cite any authority from any jurisdiction that approves such a "tacking on." In short, we consider this issue totally frivolous and without merit.

■ Finally, we consider Marilyn's claim that the trial court erred in not reimbursing her for some $14,000 she claims she lost because her pension annuity was suspended during the period of her marriage to Harry. The retirement pension in the amount of $460 per month was reinstated as of the date of the divorce. Marilyn knew in advance of her marriage to Harry that if and when she remarried she would lose her pension annuity. She voluntarily gave it up in exchange for her marriage to Harry. Harry supported her and maintained her in a comfortable home and a life style as good, if not better than that to which she was accustomed. There is no legal basis for this claim. There is no evidence of a promise or agreement regarding her forbearance of the pension. The trial court did not abuse its discretion in

failing to allow Marilyn to recover for the loss of her pension.

The trial court's disposition of the property is affirmed.

All the Justices concur.