**Arthur E. EICHMANN, Plaintiff and Appellant,**

v.

**Sandra K. EICHMANN, Defendant and Appellee.**

**No. 17447.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1991.

Decided April 22, 1992.

John A. Schlimgen, Sioux Falls, for appellant.

Sandra K. Eichmann, pro se.

AMUNDSON, Justice.

Arthur Eichmann (Art) appeals the alimony provisions of a judgment and decree of divorce from Sandra Eichmann (Sandra). We reverse the award of alimony and remand.

### FACTS

Art and Sandra were married on August 1, 1980, in Sioux Falls, South Dakota. It was the second marriage for both parties. Art was approximately 39 years of age at the time of the marriage and Sandra was about 34. Within the first month of the marriage, Art was diagnosed as a diabetic. This brought about a change in his lifestyle. He could no longer drink and, as a consequence, he no longer wanted to go out drinking and dancing with Sandra as they had before their marriage. Eventually Sandra began going out without Art and this increased in frequency during the course of the marriage. Art was also diagnosed as being partially impotent and this caused a breakdown in the parties' sexual relationship.

Sandra was also ill during much of the marriage, suffering from a chronic circulatory problem in her legs that had its onset just prior to the marriage. She has been declared disabled and unable to work for purposes of receiving social security disability benefits and her own ill health also contributed to a breakdown in the parties' sexual relationship. As the marriage deteriorated, Sandra consulted several counselors for depression related to the parties' marital problems. However, Sandra's problems did not prevent her from active social involvement as she was able to travel frequently and spent much time in local bars.

In the spring of 1989, Sandra began an extra-marital relationship with a man she met at a local bar. The man was from Arizona and began exchanging long-distance phone calls with Sandra after their meeting. Sandra also saw the man when she took a trip to Las Vegas in August, 1989. Only a "couple of weeks" after re-

turning from this trip, Sandra asked Art for a divorce.

On December 5, 1989, Art filed a summons and complaint for a divorce from Sandra on the grounds of extreme cruelty. Sandra subsequently answered and counterclaimed for a divorce on the same grounds. The action was tried on August 15–16, 1990, and, on August 31, 1990, the trial court entered its memorandum decision in the matter. On October 11, 1990, the trial court entered formal findings of fact and conclusions of law and on December 11, 1990, a judgment and decree of divorce was entered granting both parties a divorce on the grounds of extreme cruelty. On December 21, 1990, Sandra moved the trial court to vacate its judgment pursuant to SDCL 15–6–60(b) (relief due to mistake, inadvertence, excusable neglect, etc.) on the basis that it did not properly reflect the memorandum decision.[1] The motion was granted after a hearing and, on December 27, 1990, the trial court entered a new judgment and decree of divorce granting both parties the divorce and awarding alimony to Sandra. The final judgment also purported to incorporate the trial court's memorandum decision as part of its findings of fact and conclusions of law and to amend the formal findings and conclusions to the extent they were inconsistent with the memorandum decision. Art now appeals the award of alimony to Sandra.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ALIMONY TO SANDRA?

The trial court's final judgment awarded Sandra alimony as follows:

[Art] shall pay to [Sandra] alimony in the amount of $200.00 a month for twenty (20) months and the sum of $400.00 a month thereafter until [Sandra] reaches the age of 65 years, remarries or dies.

Art essentially contends the trial court abused its discretion in making this award because its findings of fact fail to support the award.

■ This court's standard of review of an award of alimony is well established:

It is clear "that a trial court's alimony award will not be disturbed 'unless it clearly appears that the trial court abused its discretion.'" Abuse of discretion is a very high standard that cannot be easily overturned. Abuse of discretion is defined as "'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" [*Tesch v. Tesch*, 399 N.W.2d 880, 884 (S.D.1987)], sets forth the frequently quoted factors the trial court should consider when setting an alimony award. They are[:]

"the length of the marriage; the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health, and physical condition; their station in life or social standing; and, the relative fault in the termination of the marriage."

*Caughron v. Caughron*, 418 N.W.2d 791, 793 (S.D.1988) (citations omitted). It is equally clear that the trial court's findings on the above factors must support its conclusion on an award of alimony. *See, e.g. Fox v. Fox*, 467 N.W.2d 762 (S.D.1991) (where trial court's findings justified award of alimony, no abuse of discretion occurred in determination that wife was entitled to alimony); *Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979) (findings of fact covering all required factors for awarding alimony supported the award). *See also, Goehry v. Goehry*, 354 N.W.2d 192 (S.D. 1984) (award of alimony must be soundly and substantially based on the evidence).

In this instance, the issue of whether the trial court's findings of fact support the award of alimony to Sandra is a question that eludes meaningful appellate review.

---

1. Although we do not pass on the propriety of this foundation for the motion for relief, we do find it questionable in view of previous statements by this court that, "it is the trial court's prerogative to re-think a decision from the bench *or a memorandum decision.*" *State v. Tapio*, 459 N.W.2d 406, 410 (S.D.1990) (emphasis added). It may well be that the granting of this motion contributed to the confusion in the record that is discussed below.

This is due to a disparity and inconsistency among the various documents in the settled record which the trial court attempted to utilize as its findings of fact and conclusions of law. As a particular example of this inconsistency, we note the determination of the relative fault of the parties in the termination of the marriage. In its original memorandum decision[2], the trial court stated, "[a] divorce will be granted to each party on grounds of the extreme cruelty of the other party. The evidence of extreme cruelty on each side is minimal." The trial court's formal findings and conclusions, however, are much more harsh and critical in laying blame for the breakdown of the marriage on Sandra. The findings specifically state that Sandra was guilty of extreme cruelty toward Art in her frequent absences from the marital home and in her extra-marital relationship. Moreover, the conclusions grant Art the divorce on the grounds of extreme mental cruelty. A turnabout occurred yet again in the trial court's final judgment which states that extreme mental cruelty existed on each side, as well as irreconcilable differences, and that a cause of action existed in favor of both parties. The judgment itself grants *both* parties the divorce.

Also vexing, due to its inconsistency, is the trial court's ultimate determination on the issue of alimony. The memorandum decision states, "[Sandra] is entitled to alimony. She should receive $200 a month for 20 months and thereafter $400 a month until *[Art]* reaches 65 years of age. [Sandra's] death or remarriage will terminate any further alimony payments." (emphasis added). In direct contradiction, the trial court's formal findings and conclusions state, "[n]either party shall pay alimony to the other." In yet another determination, the trial court's final judgment states,

"[Art] shall pay to [Sandra] alimony in the amount of $200.00 a month for twenty (20) months and the sum of $400.00 a month thereafter until *[Sandra]* reaches the age of 65 years, remarries or dies." (emphasis added). Thus, is Art to pay alimony until he reaches age 65, is he to pay any alimony, or is he to pay until Sandra reaches age 65? We are left to speculate.

In *Wilson v. Wilson*, 434 N.W.2d 742 (S.D.1989), this court was similarly confronted with inconsistencies between the formal findings and conclusions and those in a memorandum opinion incorporated therein by reference. After pointing out the inconsistencies, we held, "[t]he foregoing inconsistencies render the trial court's findings clearly erroneous and prevent an appropriate, meaningful review as to the equity of the property division. Therefore, it is necessary to remand this matter to the trial court for clarification[.]" *Wilson*, 434 N.W.2d at 744. The same is true in any attempt by this court to review the award of alimony in the present case. Accordingly, we remand this matter to the trial court for entry of findings of fact and conclusions of law relative to *each* of the factors considered in awarding alimony, such findings and conclusions to be supportive of the trial court's ultimate determination concerning alimony.

■ This holding implies no impropriety in the trial court's attempt to incorporate its memorandum decision in its findings and conclusions. Such a procedure is clearly permitted by SDCL 15–6–52(a) and has been repeatedly endorsed by this court. However, where the incorporation creates irreconcilable inconsistencies in the findings and conclusions that prohibit meaningful appellate review, remand for clarification is necessary. We acknowledge the trial court's attempt in its final judgment to

2. The memorandum decision was *not* incorporated by reference in the trial court's formal findings of fact and conclusions of law as allowed by SDCL 15–6–52(a). The trial court attempted to incorporate the memorandum in its findings by referencing the memorandum in its final judgment. We also note the final judgment contains what appear to be additional detailed findings concerning property valuations that would have been more appro-
priately contained in the formal findings of fact and conclusions of law. We find no authority in the rules of procedure for incorporation of a memorandum decision in the findings and conclusions by reference in a judgment and remind trial courts that a judgment should be confined to, "the final determination of the rights of the parties in an action or proceeding." SDCL 15–6–54(a).

amend its findings and conclusions to the extent they are inconsistent with its memorandum decision. However, even assuming the propriety of making this attempt in a judgment, it is of little value as it places this court in the posture of determining where the inconsistencies lie. Given the various possible interpretations of the documents utilized as findings and conclusions in this case, this determination is not clear and, in effect, indirectly places this court in the role of fact finder, a role we decline to fill.

Reversed and remanded.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., specially concurs in part and dissents in part.

HENDERSON, Justice (specially concurring).

Alimony or no alimony award? That is the question.

Majority opinion, almost interminably, waxes on and on concerning procedural conflict and procedural impropriety. It complicates and obscures the true issue before us.

Basically, a judgment must be supported by Findings of Fact and Conclusions of Law. Put another way, Findings of Fact and Conclusions of Law must support a Judgment. *Knodel v. Bd. of Co. Comm'rs. of Pennington Co.*, 269 N.W.2d 386 (S.D. 1978). Here, the Findings of Fact and Conclusions of Law did not support an award of alimony.

Moreover, the award of alimony does not reflect if it is (1) rehabilitative or (2) restitutional or (3) permanent alimony. However, it does not appear to be an award of permanent alimony because the trial judge's Judgment reflected that the alimony award was to be terminated at the age of 65. Were this to come to fruition, this lady would receive $101,600.00 by the time she received her last payment. With all due respect to one of the senior trial judges of this state, who has given greatly of himself in the legal profession, I earnestly, and sincerely, must disagree with such an

award under the facts of this case. Indeed, the trial court has broad discretion in an award of alimony, but such an award may be set aside when it clearly appears that there has been an abuse of discretion. *Owen v. Owen*, 351 N.W.2d 139, 141 (S.D. 1984). Four of us who serve on this Court have been trial judges; of the participating Justices on this Court, only Justice Sabers has not served on the trial bench. In truth of fact, he is, therefore, the only serving member hereon, who has not been reversed. So all of us, in any walk of life, from time to time, err. Therefore, I am constrained to say that this trial judge erred in that there was an abuse of discretion concerning alimony.

This case is being reversed and remanded on the award of alimony. I would exhort the trial judge, who has been called upon by this Court to serve on this Court as a substitute Justice, to carefully review the factors set forth in *Tesch v. Tesch* at 884, a case cited by the majority opinion, written on behalf of this Court by this special writer.

It is for, of course, the trial judge to now make his decision on alimony. It is respectfully suggested that, perhaps, no alimony should be awarded at all. These facts appear to have little dispute:

1. Sandra Eichmann receives Social Security Disability Income and Disability Insurance Income;

2. Sandra Eichmann, although Arthur Eichmann was the chief financial contributor of the marriage, received approximately 55 to 56 percent of the assets;

3. Sandra Eichmann received $5,706.15 in interim support;

4. Sandra Eichmann came into the marriage owing $5,000.00 which was paid off during the marriage;

5. Sandra Eichmann's property award must be considered when deciding if she is entitled to alimony, as both must be considered together; (*Krage v. Krage*, 329 N.W.2d 878 (S.D.1983));

6. Sandra Eichmann habitually frequented bars and she traveled extensively, all of which was costly, and nearly all of which her husband had to defray; such type of general conduct is hardly equitable; she should not be granted equity when she shows no equity;

7. Sandra Eichmann would go out at night and stay out until the early morning hours, frequenting bars in the general area of Sioux Falls, South Dakota, and ultimately had a sexual relationship, over an extended period of time, with a man she met in a bar;

8. Sandra Eichmann's trashy life style does not warrant a $101,600.00 alimony award;

9. Sandra Eichmann's health is not so bad that it restricts her outside sex life, imbibing alcohol, and tripping the light fantastic;

10. Sandra Eichmann made no contributions whatsoever, by way of entertainment or actual work, to the employment of Arthur Eichmann; *husband's career was established twenty years prior to his marriage to Sandra Eichmann;* essentially, she played no role whatsoever in educating him, comforting him in his arduous employment, aiding him in his serious health problems, and did not forego any employment opportunities.

Unfortunately, the trial judge zeroed in on Sandra Eichmann's medical condition in awarding alimony. It stands totally uncontradicted in this record that she had a disabling condition of veneous insufficiency in 1978; she had surgery for said condition in 1978 or 1979. Justice, not sympathy, should govern an alimony award. Sandra Eichmann had this condition, and it was disabling, when she married Arthur Eichmann. No testimony in this record posits that her disabling condition was exacerbat-

ed by facts arising from, or during the marriage. She has a circulation problem, associated with the aforesaid condition, and she has been medically advised that she should not smoke. But she smokes. Her overall medical condition is not now—any worse—than when she married Arthur Eichmann. So marriage or no marriage to Arthur, her medical condition is the same.

Arthur Eichmann is the innocent party here. He was not out boozing into the early hours of the morning, dancing, raising hell, chasing women, spending money, leaving his wife home, and reveling in the throes of fornication.[1] It was his Mrs. Sandra Eichmann; and she is, without question, before the courts of equity in this state, with unclean hands. *Miiller v. County of Davison*, 452 N.W.2d 119, 121 (S.D.1990). She should not prevail.[2]

Therefore, for reasons expressed above, I specially concur, believing an award of alimony below was improper.

---

1. Sandra Eichmann testified under oath that she had intimate relationships.

2. I am reminded of William Faulkner's epoch remark that man shall not only endure but will prevail. Arthur Eichmann has endured enough; he should now prevail.