#25965-r-GAS

**2012 S.D. 44**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

JEANNINE ANN BARTON,                     Plaintiff and Appellee,

    v.

DONALD L. BARTON,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN J. DELANEY
Retired Circuit Judge

* * * *

PATRICIA A. MEYERS
Rapid City, South Dakota                 Attorney for plaintiff
                                      and appellee.


BARTON R. BANKS of
Banks, Johnson, Colbath,
  Kappelman & Becker, PLLC
Rapid City, South Dakota                 Attorneys for defendant
                                      and appellant.


* * * *

CONSIDERED ON BRIEFS
ON MARCH 20, 2012

OPINION FILED **06/06/12**

#25965

SEVERSON, Justice

[¶1.] Jeannine Barton and Donald Barton divorced and the circuit court awarded Jeannine permanent alimony, a monetary judgment, and attorney fees. After Donald filed for bankruptcy, the court issued an order clarifying the nature of the monetary judgment. After an appeal of this order, Jeannine and Donald entered into a settlement agreement regarding the judgment. The agreement, which was not incorporated into the divorce decree, resolved a dispute regarding the judgment and released all present and future claims between the parties. Nine years later, Jeannine moved to modify alimony. The circuit court granted Jeannine's motion, increasing Jeannine's monthly alimony award. The court also extended Donald's alimony obligation beyond Donald's death. Donald appeals. We reverse.

## BACKGROUND

[¶2.] Jeannine and Donald divorced in 1993. The circuit court awarded Jeannine: (1) $700 per month in permanent alimony until her remarriage or death or until Donald's death; (2) a judgment against Donald for $150,000 as an equalizing property distribution; and (3) attorney fees.

[¶3.] Later in 1993, Donald filed for relief in federal bankruptcy court. Jeannine moved for an order to show cause in South Dakota circuit court as to why the $150,000 judgment and all attorney fees should not be considered alimony or support and thus, non-dischargeable in bankruptcy proceedings. In February 1994, the circuit court clarified its order and ruled that $40,000 of the $150,000 award and all of the attorney fees were in the nature of maintenance and support. Donald

- 1 -

appealed the court's decision to this Court. This Court affirmed. *Barton v. Barton*, 534 N.W.2d 48, 52 (S.D. 1995).

[¶4.]	Following the appeal, Jeannine and Donald entered into a "post-appeal settlement agreement" (Agreement). The Agreement was not incorporated into the divorce decree. The Agreement's purpose was to "settle all questions, including dischargeability, as to their respective rights and obligations under the terms of [the $150,000 judgment]." Under the Agreement, Donald would pay Jeannine just over $66,000 by certain dates. Donald would also pay Jeannine's attorney $13,991.20 in attorney fees. Donald waived "any and all legal defenses to the payments required within [the Agreement] including the protection that may be available to him pursuant to U.S.C. Title 11[.]" The Agreement also provided that Donald's "obligation to pay [Jeannine] permanent alimony in the sum of . . . $700 per month, until her remarriage or death, or the death of [Donald], shall remain undisturbed."

[¶5.]	In exchange, Jeannine released Donald from "any and all other claims, demands, causes of action or suits of any kind or nature whatsoever, which have resulted in the past or may in the future develop as a result of the contacts, transactions and dealings by and between [Jeannine] and [Donald] in connection with the marriage of [Jeannine] and [Donald]." The Agreement also provided that "[s]o long as [Donald] is in full compliance with the alimony payments and the two remaining agreed upon property payments on the [$150,000] Judgment, [Jeannine] agrees not to proceed with any collection efforts." Jeannine was represented by counsel when negotiating this Agreement.

[¶6.]	Donald made all required payments for the $66,000 and Jeannine recorded a satisfaction of judgment. Donald has also timely made all monthly alimony payments to Jeannine. Since the divorce, Jeannine obtained her teaching degree, secured fulltime employment, purchased a home, a car, and established a $140,000 retirement savings.

[¶7.]	In October 2009, Jeannine moved to modify alimony. Jeannine claimed that she was forced to leave her employment to care for her aging parents. Jeannine also claimed that her health was failing and that Donald's financial position had steadily improved since the divorce. Donald stipulated to his ability to pay. In March 2011, the court concluded that Jeannine demonstrated a change in circumstances and granted Jeannine's motion. The court ordered Donald to pay $1,500 per month in alimony. The court also ordered that the alimony terminate only upon Jeannine's death or remarriage. Thus, the alimony obligation would continue beyond Donald's death.

[¶8.]	Donald appeals, arguing that: (1) Jeannine waived the right to claim additional alimony and should be estopped from doing so because of her release of claims under the Agreement; (2) Jeannine failed to demonstrate a change in circumstances for a modification of alimony; and (3) the court erred in extending Donald's alimony obligation beyond his death.

## STANDARD OF REVIEW

[¶9.]	"Statutory interpretation is a question of law, reviewed de novo." *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162. We review a circuit court's modification of an alimony award under the abuse of discretion

standard. *Moore v. Moore*, 2009 S.D. 16, ¶ 10, 763 N.W.2d 536, 539. "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* "We review the circuit court's findings of fact under the clearly erroneous standard and conclusions of law de novo." *Id.*

### DISCUSSION

[¶10.]     **1.     Whether the circuit court had jurisdiction to modify Jeannine's alimony award.**

[¶11.]     "Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; *and the court may from time to time modify its orders in these respects.*" SDCL 25-4-41 (emphasis added). "This Court has been very clear about a trial court's ability to modify an alimony award." *Oman v. Oman*, 2005 S.D. 88, ¶ 9, 702 N.W.2d 11, 14. "[O]nce a court approves an alimony award, it can modify it." *Id.* Thus, circuit courts have continuing jurisdiction to modify a permanent alimony award. SDCL 25-4-41; *Moore*, 2009 S.D. 16, ¶ 12, 763 N.W.2d at 539-40.

[¶12.]     Here, the circuit court granted Jeannine permanent alimony as part of a divorce proceeding. Therefore, despite the Agreement, the court was authorized under SDCL 25-4-41 to modify the alimony award.

[¶13.]     **2.     Whether Jeannine demonstrated a change in circumstances warranting modification of alimony.**

[¶14.]     A party seeking modification of an alimony award must establish a change in circumstances. *Moore*, 2009 S.D. 16, ¶ 13, 763 N.W.2d at 540.

> When the trial court considers evidence as to a change in circumstances, it must be careful to confine its review to changes occurring *since the time of the divorce.* The court is not to reflect on whether the decree was "equitable" when entered, but only whether the economic circumstances of the parties have changed since the award such that the original award is now either insufficient or excessive. The role of trial courts in modification proceedings is not to relieve a party of his or her bad bargain. The original decree is res judicata except in cases of changed circumstances subsequently arising, and proceedings for modification cannot be used to review the equities of the original decree.

*Id.* ¶ 12. "Although the change need not be substantial, mere proof of a change is insufficient to mandate modification." *Id.* ¶ 13.

[¶15.] "The change in circumstances refers to a change in the *necessities* of the recipient and the *financial ability* of the obligor." *Id.* "[B]oth income and expenses of the parties must be considered." *Id.* ¶ 14. Courts may evaluate the following factors: "the intentional reduction of gross income; an inquiry into earning potential when a party is under- or unemployed; the intentional inflation of expenses; and the offsetting effect of cohabitation on expenses." *Id.* "Just as courts must be wary of an alimony obligor's efforts to minimize his or her ability to pay through under- or unemployment, courts must also consider conduct by the alimony recipient to maximize his or her unmet needs through speculative expenses and the minimization of support provided by their live-in cohabitants." *Id.* ¶ 15.

[¶16.] Here, the health concerns asserted by Jeannine are primarily the same health concerns discussed at the time of the divorce. A court must consider only changes in Jeannine's health conditions since the time of the divorce. In addition, Jeannine admitted she voluntarily retired in 2005 to care for her parents and that she did not suffer from any health issues that prevented her from working. The

record demonstrates that Jeannine voluntarily left employment, declined other employment, and acquired many assets since the divorce. We also note that while Jeannine identified many home improvement and repair projects when requesting alimony modification, Jeannine later testified that the projects are either completed and paid for in full, or merely anticipatory in nature.

[¶17.]     In addition, regarding Jeannine's monthly income, the court found that Jeannine "relies on her retirement from SDRS of $608, $700 in alimony and what she earns from substitute teaching to meet her monthly expenses. In 2009 she earned $15,000 substitute teaching and had gross income of $30,839." The court concluded that Jeannine "has current financial needs of $2,602 per month and current income of $608 from SDRS, $700 from alimony and various amounts earned by substitute teaching. Her average net income is less than $2,000." The court's findings relating to Jeannine's monthly income are erroneous for several reasons. First, the court failed to include the $881 per month that Jeannine receives in social security. The court also used the $608 figure for retirement income, when Jeannine testified that she was now getting $675 per month in retirement benefits. Furthermore, the court summarily concludes that Jeannine's net monthly income is less than $2,000. However, using Jeannine's 2009 earnings for substitute teaching ($15,000) as a guide, Jeannine's monthly income would be approximately: $675 (retirement) plus $881 (social security) plus $700 (alimony) plus $1,250 (substitute teaching), equaling just over $3,500. The circuit court did not delineate how it calculated the net earnings and the record does not support the court's findings regarding Jeannine's monthly income.

[¶18.] Finally, we find Jeannine's argument that she did not receive the entire $150,000 judgment unpersuasive. Jeannine voluntarily settled with Donald to receive less than the full judgment and was represented by counsel when doing so. We also agree with Donald that the circuit court considered the change in property division when it clarified the $150,000 judgment in 1994 and ordered that $40,000 of the $150,000 award was in the nature of alimony. Upon this record, we conclude that the court abused its discretion in modifying Jeannine's alimony award.

[¶19.] **3.      Whether the circuit court erred in extending Donald's alimony obligation beyond his death.**

[¶20.] Here, Donald argues that alimony is a personal obligation that cannot be extended beyond the obligor's death. Donald alternatively argues that even if this Court affirms the circuit court's decision to extend Donald's alimony obligation beyond his death, Jeannine has not demonstrated a change in circumstances and thus, the alimony modification was an abuse of discretion. Jeannine responds that her needs will not terminate upon Donald's death.

[¶21.] In *Lodde v. Lodde*, 420 N.W.2d 20, 21 (S.D. 1988), this Court acknowledged that "[g]enerally, in the absence of an agreement between the spouses, the obligation to pay alimony ceases on the death of the obligor spouse." However, we need not determine whether a court may, under any factual circumstances, extend an alimony obligation beyond the obligor's death.

[¶22.] Jeannine's request that Donald's alimony obligation extend beyond his death was a request for a modification of alimony award as the original Divorce Judgment provided for alimony to be paid until "the death of the Defendant

[Donald]." Thus, under our case law, Jeannine carried the burden of demonstrating a change in circumstances since the time of the divorce to warrant the modification. *Moore*, 2009 S.D. 16, ¶ 13, 763 N.W.2d at 540. The circuit court found that "without the continued alimony, [Jeannine] would be unable to adequately support herself in her old age." The court also found that Donald's assets would allow for a continued alimony obligation beyond his death. The court then concluded as a matter of law that Jeannine's need for support will not diminish as she ages and ordered that the alimony award will terminate only upon Jeannine's death. However, these findings and conclusions are not supported by the record. Jeannine did not show how her need for support beyond Donald's death is a change in circumstance since the time of the divorce.

[¶23.] "The change in circumstances refers to a change in the *necessities* of the recipient and the *financial ability* of the obligor" and that "both income and expenses of the parties must be considered." *Id.* ¶¶ 13-14. In addition, the record demonstrates that Donald was significantly more financially stable than he was at the time of the divorce. However, the record does not support the circuit court's findings regarding Jeannine's need for support beyond Donald's death and thus, the court abused its discretion in extending the alimony award beyond Donald's death.

[¶24.] **4.     Whether either party is entitled to appellate attorney fees.**

[¶25.] Both parties moved for appellate attorney fees and submitted itemized statements of legal services. We may award appellate attorney fees in cases involving alimony. SDCL 15-26A-87.3 and 15-17-38. "To determine whether attorney fees are proper in domestic relation cases, we consider the property owned

by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Larson v. Larson*, 2007 S.D. 47, ¶ 22, 733 N.W.2d 272, 278. We deny both Jeannine's and Donald's request for appellate attorney fees.

## CONCLUSION

[¶26.]      Mere proof that a change has occurred does not mandate a modification of alimony. *Moore*, 2009 S.D. 16, ¶ 13, 763 N.W.2d at 540. Clearly Donald's financial situation has changed. However, the amount of alimony established in the original divorce decree was not predicated solely on Donald's ability to pay. The divorce court also originally considered Jeannine's need. Based on the record presently before this Court, the circuit court's findings when it considered modification do not support a change in circumstances justifying a modification of alimony. Thus the circuit court is reversed. However, under SDCL 25-4-41, the circuit court retains jurisdiction to modify its order regarding alimony upon sufficient proof establishing a change in circumstances since the time of divorce, considering a change in the necessities of the recipient and the financial ability of the obligor.

[¶27.]      Reversed.

[¶28.]      GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, and GERING, Circuit Court Judge, concur.

[¶29.]      GERING, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.