#29092-a-SRJ
**2020 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CINDY BEA LEEDOM,                           Plaintiff and Appellee,

    v.

DAVID WAYNE LEEDOM,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

RICHARD L. JOHNSON
Sioux Falls, South Dakota              Attorney for plaintiff and
                                       appellee.


THOMAS M. KELLER
Sioux Falls, South Dakota              Attorney for defendant and
                                       appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 27, 2020
OPINION FILED **07/15/20**

#29092

JENSEN, Justice

[¶1.]	David and Cindy Leedom divorced in 2004.  The divorce court ordered

David to pay Cindy monthly alimony in the amount of $3,000.  David stopped

paying alimony in January 2017, after reaching the age of social security eligibility.

Cindy filed a motion to restore alimony in the circuit court (modification court)

alleging that David was obligated to pay lifetime alimony of $3,000 per month.  The

modification court held David's obligation to pay alimony was continuing.  The court

also determined that he owed accrued alimony from the time he stopped paying

until the time of the modification hearing, which totaled $87,000.  The court then

reduced David's monthly alimony obligation to $1,750 beginning on June 1, 2019.

David appeals.  We affirm.

## Facts and Procedural History

[¶2.]	Cindy commenced a divorce action against David in March 2003.

David and Cindy had been married for 22 years.  David was employed in the

banking business and earned between $200,000 and $384,000 annually in the four

years prior to the divorce.  Cindy worked sporadically during the marriage.

[¶3.]	A two-day divorce trial was held in May 2004.  At the time of trial,

Cindy was working part-time at a clothing store, earning approximately $2,000 per

month.  David testified his income had been reduced to $125,000 annually because

of a downturn in the credit card industry.

[¶4.]	The divorce court entered a written memorandum opinion on July 8,

2004, resolving all the issues in the divorce, including Cindy's request for alimony.

The memorandum opinion required David to pay Cindy alimony of $3,000 per

month, stating:

The $3,000 per month of alimony will be payable every month to Cindy until any of the following conditions present themselves:

    a. Cindy remarries;
    b. David reaches the age of social security eligibility; or
    c. David's income increases substantially.

[¶5.] The memorandum opinion further detailed that:

If Cindy remarries the alimony terminates. If David reaches the age of social security eligibility and chooses to retire, then alimony may be subject to modification due to a change in David's income, if any. If David's income increases substantially over the next fifteen years, then alimony may be modified if Cindy can establish modification is warranted. Of course, alimony modification sought by either party may be warranted if other factors as recognized by South Dakota law are present.

[¶6.] The divorce court entered written findings of fact and conclusions of law and a decree of divorce (divorce decree) on August 24, 2004. The divorce court incorporated the findings of fact and conclusions of law from the memorandum opinion into the divorce decree. The divorce decree provided the following with respect to David's obligation to pay alimony:

[David] shall pay to [Cindy] the sum of $3,000 per month alimony until any of the following conditions present themselves:

    a. [Cindy] remarries;
    b. [David] reaches the age of social security eligibility; or
    c. Either party undergoes a substantial change in circumstances.

[¶7.] Over the years, David consistently paid his alimony obligation and neither party moved to modify alimony. In November 2016, David turned 62 and became eligible to draw social security. David also retired from his position at MetaBank in January 2017. He stopped paying monthly alimony after making the December 2016 payment. Cindy texted David in January 2017 after she did not

receive the January alimony payment. David responded that he would no longer be paying alimony to her "by the terms of the decree."

[¶8.]        Cindy filed a motion to restore alimony in October 2017. The modification court held a hearing on the motion and received evidence from both parties. Cindy argued that the divorce court had ordered David to pay lifetime alimony and David had an ongoing obligation to pay $3,000 per month unless modified by the court. David argued that he was no longer obligated to pay alimony under the divorce decree after he became eligible for social security and retired. David also argued that he was not able to pay alimony because he was no longer earning income.

[¶9.]        The modification court entered a written memorandum opinion on May 20, 2019, which was incorporated into a final order. The court determined that David's alimony obligation did not automatically terminate under the divorce decree when David reached the age of social security eligibility and therefore ordered David to pay the accrued alimony of $87,000 to Cindy for the period from January 2017 through May 2019. The court also reduced David's ongoing alimony obligation to $1,750 per month beginning on June 1, 2019.

[¶10.]        David appeals raising multiple issues that we state as follows:

1. Whether the original alimony award terminated upon David reaching the age of social security eligibility.

2. Whether the modification court abused its discretion when it modified the terms of the alimony obligation.[1]

---

1.    David also argues that Cindy should be precluded from requesting alimony because she waited nearly ten months to file a motion with respect to the ongoing payment of alimony. David cites no authority for this proposition. Moreover, because David's alimony obligation never terminated under the terms of the divorce decree, his argument is without merit.

## Standard of Review

[¶11.] "We review alimony determinations under the abuse of discretion standard." *Haanen v. Haanen*, 2009 S.D. 60, ¶ 12, 769 N.W.2d 836, 841. A circuit court's decision regarding whether to modify an alimony award is also reviewed for abuse of discretion. *Barton v. Barton*, 2012 S.D. 44, ¶ 9, 815 N.W.2d 553, 557. This Court reviews a "circuit court's findings of fact under the clearly erroneous standard" and reviews "conclusions of law de novo." *Lowe v. Schwartz*, 2007 S.D. 85, ¶ 9, 738 N.W.2d 63, 66-67.

## Analysis and Decision

> 1. *Whether the original alimony award terminated upon David reaching the age of social security eligibility.*

[¶12.] David argues that the modification court erred by considering the divorce court's memorandum opinion in determining that David's alimony obligation did not automatically terminate when he became eligible to draw social security. He also contends that the divorce decree and the memorandum opinion are inconsistent as to when his alimony obligation was to terminate. Finally, David argues that the divorce court intended David's alimony obligation to terminate when he became age eligible for social security, and the modification court erred by concluding otherwise.

[¶13.] SDCL 15-6-52(a) provides in part, "If an opinion or memorandum of decision is filed, the facts and legal conclusions stated therein need not be restated but may be included in the findings of fact and conclusions of law by reference." The incorporation of a memorandum opinion into a circuit court's findings and conclusions "is clearly permitted by SDCL 15-6-52(a) and has been repeatedly

endorsed by this court." *Eichmann v. Eichmann*, 485 N.W.2d 206, 208 (S.D. 1992); *see also Speck v. Anderson*, 349 N.W.2d 49, 51 (S.D. 1984) (holding the court's findings of fact and conclusions of law incorporated the memorandum by reference); *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250, 253 (S.D. 1984) (acknowledging that the trial court's memorandum opinion was incorporated into the findings of fact and conclusions of law).

[¶14.] David points to *Moser v. Moser* to support his claim that the modification court improperly referenced the memorandum opinion to conclude that alimony did not automatically terminate when David became eligible for social security. In *Moser* we stated, "the memorandum opinion is merely an expression of the trial court's opinion of the facts and the law. It has no binding effect. The findings of fact and conclusions of law and judgment, as signed by the judge, are the binding statement of adjudication." 422 N.W.2d 594, 596 (S.D. 1988). However, *Moser* specifically referenced that the memorandum opinion "was not incorporated in the court's findings of fact and conclusions of law." *Id.* Here, the divorce court incorporated the findings of fact and conclusions of law from the memorandum opinion as a part of the divorce decree. Therefore, the modification court properly referenced the divorce court's memorandum opinion in considering whether David's alimony obligation automatically terminated when he reached the age of social security eligibility.

[¶15.] David next argues that the divorce court's memorandum opinion should not have been relied upon because it was inconsistent with the divorce decree. He cites *Eichmann*, where we remanded an alimony award to the circuit court due to inconsistencies between the court's conclusions of law and incorporated

memorandum opinion. 485 N.W.2d at 208. In *Eichmann*, we held "where the incorporation creates irreconcilable inconsistencies in the findings and conclusions that prohibit meaningful appellate review, remand for clarification is necessary." *Id.* However, *Eichmann* is inapplicable here because the divorce decree and memorandum opinion in this case are not inconsistent. Rather, the memorandum opinion is in harmony with the divorce decree and explains the divorce court's intentions concerning future conditions that may impact alimony.

[¶16.]     The relevant language of the divorce decree provides, "the defendant shall pay to the Plaintiff the sum of $3,000 per month alimony until any of the following conditions present themselves: . . . b.) Defendant reaches the age of social security eligibility; . . ." David interprets such language to mean that his alimony obligation terminated once he reached the age for social security eligibility. However, the language did not provide for termination when David became age eligible for social security. Rather, the language merely described his age as one condition that may impact David's obligation to pay alimony in the amount of $3,000 per month.

[¶17.]     The divorce court's memorandum opinion explains the effect on alimony if certain conditions occur in the future. In particular, upon David reaching the age of social security eligibility *and* choosing to retire, the memorandum opinion provides that "*alimony may be subject to modification* due to a change in David's income."[2] (Emphasis added.) The modification court properly

---

2. This language is in contrast with the self-executing condition of Cindy remarrying. In such event, the memorandum decision provides that alimony automatically terminates.

found that the divorce decree and memorandum opinion were not inconsistent. It first looked to the divorce decree, which listed the conditions impacting David's obligation to pay monthly alimony of $3,000. Finding that one of those conditions had been satisfied, it appropriately considered the memorandum opinion for further guidance. Thus, the modification court properly determined that David was obligated to pay $3,000 per month until the court modified alimony beginning on June 1, 2019.

> 2. *Whether the modification court abused its discretion when it modified the terms of the alimony obligation.*

[¶18.] Once David was of eligible age for social security and retired, the divorce decree and memorandum opinion permitted the modification court to modify David's alimony obligation "due to a change in David's income, if any." The modification court found that David no longer had any income after his retirement in January 2017. Based upon this change, the court then considered a modification of his alimony obligation. Further, even in the absence of the language in the divorce decree, the modification court had "continuing jurisdiction to modify permanent alimony as circumstances may require." *Moore v. Moore*, 2009 S.D. 16, ¶ 12, 763 N.W.2d 536, 540.

[¶19.] Notwithstanding, David claims that the modification court abused its discretion in ordering him to continue paying alimony when he had retired and was no longer earning any income at the time of the hearing. Additionally, he argues that Cindy was earning a greater income at the time of the modification hearing than she did at the divorce proceeding and that the modification court improperly

#29092

focused on Cindy's health conditions, which had not changed and were fully considered by the divorce court in its original alimony determination.[3]

[¶20.] "To justify a change in alimony payments there must merely be a change of circumstances from the circumstances which existed at the time of the original decree." *Horton v. Horton*, 503 N.W.2d 248, 252 (S.D. 1993).

> When the trial court considers evidence as to a change in circumstances, it must be careful to confine its review to changes occurring *since the time of the divorce*. The court is not to reflect on whether the decree was "equitable" when entered, but only whether the economic circumstances of the parties have changed since the award such that the original award is now either insufficient or excessive. The role of the trial courts in modification proceedings is not to relieve a party of his or her bad bargain. The original decree is res judicata except in cases of changed circumstances subsequently arising, and proceedings for modification cannot be used to review the equities of the original decree.

*Moore*, 2009 S.D. 16, ¶ 12, 763 N.W.2d at 539 (quoting *Olson v. Olson*, 1996 S.D. 90, ¶ 11, 552 N.W.2d 396, 399-400). "The change in circumstances refers to a change in the *necessities* of the recipient and the *financial ability* of the obligor." *Barton v. Barton*, 2012 S.D. 44, ¶ 15, 815 N.W.2d 553, 558 (quoting *Moore*, 2009 S.D. 16, ¶ 13, 763 N.W.2d at 540).

---

3. David also cites language from *Savage v. Savage*, 2003 S.D. 46, ¶ 22, 661 N.W.2d 762, 768, which stated "the termination of an award of periodic alimony does not bring an end to the jurisdiction of the court to consider whether alimony should be reinstated at a later time if a change in circumstances is demonstrated." (quoting *Saxvik v. Saxvik*, 1996 S.D. 18, ¶ 11, 544 N.W.2d 177, 180). He argues that if the alimony award had automatically terminated before Cindy filed her motion, *Savage* suggests that the modification court should have only considered her circumstances from the time the alimony award automatically terminated, rather than from the time of the divorce decree. Since David's alimony award did not automatically terminate, it is unnecessary to address this argument.

[¶21.] This Court has also considered other factors when evaluating a change in circumstances, such as "the intentional reduction of gross income; an inquiry into earning potential when a party is under- or unemployed; the intentional inflation of expenses; and the offsetting effect of cohabitation on expenses." *Id.* (quoting *Moore*, 2009 S.D. 16, ¶ 14, 763 N.W.2d at 540). "Just as courts must be wary of an alimony obligor's efforts to minimize his or her ability to pay through under- or unemployment, courts must also consider conduct by the alimony recipient to maximize his or her unmet needs through speculative expenses and the minimization of support provided by their live-in cohabitants." *Id.* (quoting *Moore*, 2009 S.D. 16, ¶ 15, 763 N.W.2d at 540).

[¶22.] Here, the modification court conducted a detailed analysis of the parties' financial circumstances both at the time of the divorce and at the time of the modification hearing. The court noted that at the time of the divorce, David was earning an annual income of approximately $125,000. Later, at the height of his career, David had annual earnings as high as $475,000. The modification court also considered that David sustained a significant back injury after the divorce that affected his ability to work. The injury decreased his income after 2012, and factored in to his decision to retire in 2017. Although David was eligible to draw social security in 2017, he elected not to do so at that time in order to increase his monthly social security draw in future years. David had no other earned income at the time of the modification hearing.

[¶23.] The modification court also analyzed the changes in David's assets. The parties' net assets at the time of the divorce were valued at less than $500,000. Since the divorce, David had built a home in Arizona valued at $662,676 and

another home in Sioux Falls valued at $755,000. The court found that David had significant equity in both homes. In addition to his homes, the modification court found that David had bank and investment accounts valued at $4,046,670.[4] David testified that he continues reinvesting the dividends he receives from his investments. He also testified that his monthly budget was $16,847, which he is able to maintain by liquidating assets.

[¶24.]    The court then considered the changes in Cindy's financial circumstances. At the time of the divorce, Cindy received $115,000 in addition to the alimony award. Since the divorce, Cindy worked a number of different jobs, including several managerial positions in retail sales. Cindy's highest yearly salary after the divorce was just over $51,000. The modification court found that Cindy also encountered significant ongoing health issues that had worsened since the divorce. However, much of the court's discussion concerning Cindy's health related to her ongoing medical bills and their impact on her financial situation. The court found that Cindy had depleted her 401K to pay these medical bills and had incurred other debt since the divorce. At the time of the modification hearing, Cindy was living with her son because of financial issues. The court also found Cindy's monthly budget was $4,935.95, while her gross income was approximately $4,576.58. Cindy testified at the hearing that her employment would soon be ending because the store she worked at was closing. She expressed concern about finding comparable employment in her mid-60s.

---

4.    The valuation of David's accounts were based upon values more than a year prior to the hearing. The modification court noted that it had not been provided more recent valuations for David's assets.

[¶25.]     David's claim that he cannot be ordered to pay alimony because he is no longer earning income cannot be squared with our case law or this record. Consistent with *Moore*, the modification court properly considered both parties' overall change in financial circumstances since the time of the divorce, including the fact that David had retired and Cindy was earning more income than at the time of the divorce.  Despite his retirement, the court found that David was able to maintain two high-end homes and a monthly budget of over $16,000.  Conversely, Cindy's monthly budget was less than one-third of David's budget.  She had also acquired significant debt since the divorce and was living with her son to stretch her monthly income.  Finally, the court also found that neither party purposefully altered their financial circumstance to affect the alimony determination.

[¶26.]     After conducting a full analysis of Cindy's needs and David's financial ability, the modification court found that the changed circumstances since the divorce warranted a reduction of David's monthly alimony obligation, but not a termination of the obligation.  Considering the economic circumstances of both parties, the circuit court did not abuse its discretion by ordering David to continue paying alimony and reducing the monthly obligation to $1,750.

[¶27.]     We affirm.

[¶28.]     GILBERTSON, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.